```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
                      HOUSTON DIVISION

GLENN MILLER, ANTONIO HILL      §
and KIOSHA DAVIS,               §
                                §
     Plaintiffs,                §
                                §
v.                              §   Civil Action No. H-08-978
                                §
PROMINENCE SECURITY AGENCY,     §
INC., d/b/a PROMINENCE          §
PRESSURE WASHING & PAINTING,    §
PROMINENCE LIMOUSINE &          §
BODYGUARD SERVICES, and         §
PROMINENCE SECURITY AGENCY,     §
and DONALD AIKENS,              §
                                §
     Defendants.                §
```

### **MEMORANDUM OPINION**

Plaintiffs Glenn Miller ("Miller"), Antonio Hill ("Hill") and Kiosha Davis ("Davis") bring this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., for unpaid overtime pay. Miller also claims he was fired in retaliation for his filing the present suit. The parties agreed to try the overtime issues to the court and submitted the issue of retaliation to a jury.[1] The court makes the following findings of fact and conclusions of law.

The FLSA provides that "no employer shall employ any of his employees who in any workweek . . . is employed in an enterprise engaged in commerce . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in

---

[1] The parties consented to proceed before the undersigned pursuant to 28 U.S.C. § 636(c). See Docket Entry Nos. 49 and 51.

excess of [forty hours] at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).

Defendants Donald Aikens ("Aikens") and Prominence Security Agency, Inc., ("Prominence") challenge the law's applicability to each of them, arguing that Aikens is not subject to the FLSA because he does not meet the statutory definition of an "employer," and that Prominence does not meet the statutory definition of an "enterprise engaged in commerce."  The court disagrees on both counts.

The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).  This definition must be liberally construed to effectuate Congress's remedial intent.  Reich v. Circle C Inv., Inc., 998 F.2d 324, 329 (5th Cir. 1993).

The definition of an employer includes any manager or owner who acts, or has the power to act, "on behalf of the corporation vis-a-vis its employees."  Reich, 998 F.2d at 329.  Examples of exercising control over the workplace include hiring and firing employees, supervising and delegating employee duties and responsibilities, financial record keeping and signing payroll checks.  Id.

In the present case, the evidence shows that Aikens was an employer of the Plaintiffs.  Aikens testified that he was the sole

owner and president of Prominence.  There were four components to his business: contract security work, bodyguard assignments, investigations and security training.  Aikens determined who to hire and fire, the hours each employee worked and their rate of pay.  He also maintained employee files.

Based on the foregoing, the court finds that Aikens is an employer as defined by the FLSA.  Based on this finding, Aikens may be jointly and severally liable with Prominence for damages resulting from the failure to comply with the FLSA.  <u>Donovan v. Grim Hotel, Inc.</u>, 747 F.2d 966, 971 (5th Cir. 1985).

The court also finds that Prominence meets the definition of an employer under the FLSA's Section 203(d).  Each plaintiff worked for Prominence, was paid by Prominence and displayed the Prominence company logo on his or her work uniform.  Thus, Prominence was an employer of Plaintiffs for purposes of FLSA liability.

The FLSA defines an enterprise engaged in commerce as an enterprise that "has employees engaged in commerce . . . and is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 . . . ."  29 U.S.C. §§ 203(s)(1)(A)(i),(ii).  Prominence does not dispute that its employees were engaged in commerce.  Instead, Prominence argues that it was not subject to the FLSA until its annual gross volume of sales exceeded $500,000.  Prominence concedes that its annual gross sales first exceeded $500,000 on October 17, 2006.  During

the years relevant to this case, 2007 and 2008, Prominence grossed in excess of $500,000 in each of those years.  Aikens testified that even though Prominence exceeded the $500,000 threshold in the last quarter of 2006, he believed that in January 2007 the gross sales figure was reset to zero and the company was not subject to the FLSA until it grossed over the statutory threshold for that year.  Aikens' opinion is not supported by the applicable regulation.

That regulation, 29 C.F.R. § 779.266(a), provides, in pertinent part:

> No computations of annual gross dollar volume are necessary to determine coverage or exemption in those enterprises in which the gross receipts regularly derived each year from the business are known by the employers to be substantially in excess or substantially under the minimum dollar volume specified in the applicable provision of the Act.
> . . .
> Nor is the [rolling quarter computation method] required where the enterprise or establishment has not yet in such current year exceeded the statutory amount in its gross volume of sales or business, if it has had, in the most recently ended year used by it for income tax purposes, a gross volume of sales made and business done in excess of the amount specified in the Act. **In such event, the enterprise or establishment will be deemed to have an annual gross volume in excess of the statutory amount unless the employer establishes, through the use of [the rolling quarter computation method] an annual gross volume in sales made or business done which is less than the amount specified in the Act.**

In the present case, it is undisputed that Prominence grossed over $500,000 in years 2006, 2007 and 2008.  Thus, it is subject to the FLSA for calendar years 2007, 2008 and 2009 as it meets the

4

statutory definition of an enterprise engaging in commerce found in 29 U.S.C. §§ 203(r),(s). The rolling quarter computation method is not applicable as Prominence's volume of sales for tax purposes was in excess of the statutory threshold for years 2006, 2007, and 2008. Thus, the court concludes that Prominence was an enterprise engaged in commerce and is subject to the FLSA for the years in issue.

### Glenn Miller

Miller testified that he began working at Prominence in September 2007. When he received his first paycheck, he noticed that he had been paid his usual hourly rate for hours worked over forty. Miller went to a supervisor and complained. He was told that the company was not required to pay overtime as a small business and therefore he would not be compensated at a time-and-one-half rate for overtime hours.

Plaintiffs' Exhibit 3 showed that from September 3, 2007, to April 20, 2008, Miller worked 477 hours overtime but was only compensated at his usual hourly rate, $9.50 per hour.[2] Therefore, Miller was underpaid $2,265.75 (477 x $4.75) by Prominence and Aikens.

The court finds that Aiken's strained reading of the FLSA's $500,000 threshold described above and his belief that Prominence

---

[2] The court totaled the number of hours of overtime claimed for each pay period. This showed the number of overtime hours actually worked was 477, not 464 as recorded on the exhibit.

was not subject to the FLSA was not based on advice of counsel or FLSA publications available to employers but was myopically self-serving.  Although Aikens claimed that in the beginning of 2008 Prominence lost several large contracts and could not afford to pay overtime, there was no such constraint in mid to late 2007 when Prominence was subject to the FLSA and refused to pay overtime.  In light of the above, the court concludes that Prominence and Aiken's violation of the FLSA was willful.

Pursuant to the FLSA, an employer who violates its overtime provisions shall be liable for "an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  The FLSA permits the court to decline to award or reduce the amount of liquidated damages "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260.

The Fifth Circuit has held that an employer who has been found to have willfully violated the FLSA could not have acted in good faith when considering whether to reduce the amount of liquidated damages awarded under 29 U.S.C. § 260.  Singer v. City of Waco, Tex., 314 F.3d 813, 823 (5th Cir. 2003).  Accordingly, the court also awards liquidated damages to Miller in the amount of $2,265.75, for a total back pay award of $4,531.50.

In March 2008, prior to the filing of this lawsuit, Prominence paid Miller $1175.63 in partial payment of back due overtime pay. The offset amount is applied after assessing liquidated damages. See Singer v. City of Waco, 324 F.3d 813, 823 n.2 (5th Cir. 2003); Mexger v. Price CPA's, PLLC, Civil Action No. 3:08cv0163, 2008 WL 4186189 at *4 (M.D. Tenn. Sept. 8, 2008)(citing Martin v. Ind. Mich. Pwr. Co., 292 F.Supp.2d 947, 960 (W.D. Mich. 2002)). Thus, the court subtracts this from the amount awarded, leaving an unpaid balance of $3,355.87.

Miller filed the present lawsuit on March 28, 2008, seeking the unpaid overtime for hours worked in excess of forty. After the lawsuit was filed, Prominence reduced the number of hours he worked and changed his work assignments to locations requiring significant commutes from his residence. He had a difficult time communicating with his supervisor about job assignments as his calls would not be returned.

At the request of the parties, the court submitted the issue of retaliation to the jury. The jury determined that Miller had been retaliated against by Defendants for filing the present suit and awarded $14,000 in back pay. For the reasons discussed above, the court also awards liquidated damages in the amount of $14,000.

Judgment shall be entered in favor of Miller in the total amount of $31,355.87 against Prominence and Aikens.

Kiosha Davis

Kiosha Davis ("Davis") worked for Prominence and Aikens as a security guard from July 11, 2007, to August 2, 2007. She worked a total of 23.5 hours overtime for which she was paid her usual hourly rate, $9.00. She was underpaid $105.75 (23.5 x $4.50). Davis testified that when she complained about not being paid at a time-and-one-half rate for overtime, she was told that it would be in her next check. She was terminated shortly thereafter and was never paid the overtime differential.

The court has found that Prominence and Aikens willfully violated the FLSA, therefore, the court also assesses liquidated damages in the amount of $105.75.

Judgment shall be entered in favor of Davis in the amount of $211.50 against Prominence and Aikens.

<u>Antonio Hill</u>

Antonio Hill ("Hill") worked for Prominence and Aikens as a security guard from August 31, 2007, to December 5, 2007. He worked a total of 118 hours overtime for which he was paid his usual rate, $9.50 per hour. He, too, complained about not being paid the time-and-one-half overtime differential and was told that the company did not pay for overtime. After he complained, he was terminated from his employment. Prior to his termination, Hill worked 110 overtime hours and was underpaid $522.50.

For the reasons discussed above, the court also awards Hill liquidated damages in the amount of $522.50, for a total award of

$1,045. After the commencement of this lawsuit, Aikens and Prominence paid Hill $560.50. The court subtracts this amount from the total amount to be awarded, leaving an unpaid balance of $484.50.

Judgment shall be awarded in favor of Hill in the amount of $484.50 against Prominence and Aikens.

Attorneys' fees

The FLSA provides for the imposition of costs and attorneys' fees in favor of prevailing parties. 29 U.S.C. § 216(b). In determining the amount of fees to be awarded, the court must use the "lodestar" method. Strong v. Bellsouth Telecomm., Inc., 137 F.3d 844, 850 (5th Cir. 1998).

Initially, the district court must determine the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating lawyers. Then, the district court must multiply the reasonable hours by the reasonable hourly rates. The product of this multiplication is the lodestar, which the district court then either accepts or adjusts upward or downward, depending on the circumstances of the case. La. Power & Light Co. v. Kellstrom, 50 F.3d 319, 324 (5th Cir. 1995)(internal citations omitted). The party requesting attorney's fees has the burden to demonstrate entitlement to the fees and to document the hours expended and the hourly rate. Id.

The principle underlying this "lodestar" framework is that the attorney's fees awarded should be reasonable. Reasonableness is determined by consideration of twelve factors. <u>Von Clark v. Butler</u>, 916 F.2d 255, 258 (5th Cir. 1990). These factors are: (1) the time and labor involved; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of counsel; (10) the undesirability of the case; (11) the nature and length of the professional relationship between the attorney and the client; and (12) awards in similar cases. <u>Johnson v. Ga. Highway Express, Inc.</u>, 488 F.2d 714, 717-19 (5th Cir. 1974), <u>overruled on other grounds</u>, <u>Blanchard v. Bergeron</u>, 489 U.S. 87 (1989).

First, the court will consider the hourly rate billed and then review the number of hours expended in preparing the case.

### 1. Hourly Rate

<u>Mr. Fiddler</u>

Mr. Fiddler represented Plaintiffs Miller and Davis. In his declaration, Mr. Fiddler affirmed that his billing rate was $375

per hour.[3]  Mr. Fiddler has been licensed since 1990 and he has worked almost exclusively in the area of labor and employment law during that time.  His billing rate is supported by his affidavit and the Texas Lawyer 2008 Legal Almanac.[4]  Mr. Fiddler is certified in Civil Trial Law and Labor and Employment Law by the Texas Board of Legal Specialization.[5] He has litigated numerous cases in this field and his experience entitles him to render an opinion on fees.

Mr. Fiddler's legal assistant is billed at $125 per hour and two law clerks are billed at $75 per hour.[6]  Mr. Fiddler supports these fees with his affidavit.

### Mr. Welmaker

Mr. Welmaker represented Plaintiff Hill.  He avers that he bills at the rate of $325 per hour.[7]  He has been licensed to practice law for sixteen years and has practiced, almost

---

[3] Plaintiffs' Motion for Judgment and Application for Attorney's Fees, Docket Entry No. 66, Declaration of Scott Fiddler, p. 2.

[4] Id.

[5] Id.

[6] Id.

[7] Plaintiff's Motion for Judgment and Application for Attorney's Fees, Docket Entry No. 67, Declaration of Douglas B. Welmaker, p. 2.

11

exclusively, in the area of labor and employment law.[8]  His legal assistant is billed at the rate of $125 per hour.[9]

Defendants Prominence and Aikens have interposed no objection to the hourly rates charged by Plaintiffs' attorneys, paralegals or law clerks.  The court therefore finds that the hourly rates charged by each attorney and his staff are reasonable hourly rates.

### 2. Number of Hours Charged

#### Mr. Fiddler

Mr. Fiddler averred that he and his staff spent 195.2 hours pursuing Miller and Davis's claims, for a total of $42,655.  Of that amount, $800 was attributable to Davis's claim, and $41,855 was spent on Miller's claims.  Attached to Fiddler's affidavit are the actual billing records and, from the court's review of them, they appear to reflect reasonable billing judgment.

#### Mr. Welmaker

Mr. Welmaker averred that he and his staff spent forty-one hours pursuing Hill's claims, for a total of $12,925.  Attached to Welmaker's affidavit are his actual time records, and, from the court's review, appear to reflect reasonable billing judgment.

Defendants Prominence and Aikens have interposed no objection to the number of hours each attorney spent pursuing his clients'

---

[8]  Id.

[9]  Id.

claims. The court therefore finds that the time each attorney spent on this action was reasonably expended.

Therefore, the lodestar amount for Mr. Fiddler is $42,655 and the lodestar amount for Mr. Welmaker is $12,925.

### 3. Adjustments to the Lodestar Amount

The court must next determine whether the lodestar amount should be adjusted based on the <u>Johnson</u> factors.

<u>Time and labor involved</u>: This factor was subsumed in the court's calculation of the lodestar amount. See <u>Shipes v. Trinity Indus.</u>, 987 F.2d 311, 320 (5th Cir. 1993).

<u>Novelty and difficulty of the issues</u>: Although this case is a FLSA action, and hence required some specialized knowledge, it did not involve novel or complex legal issues. No adjustment of the lodestar is necessary.

<u>Skill required to perform the legal services properly</u>: This factor is inapplicable to this case.

<u>Preclusion of other employment due to this case</u>: There is no evidence before the court suggesting that this was a factor in this case. No lodestar adjustment can be made on this basis.

<u>Customary fee</u>: This factor was incorporated in the court's calculation of the lodestar amount.

<u>Whether fixed or contingent</u>: This factor is not relevant.

<u>Time limitations imposed by the client or circumstances</u>: There is no argument or evidence that time constraints were a factor in this case.

<u>Amount involved and results obtained</u>:  The lodestar amount included all reasonable fees through trial. All Plaintiffs recovered some amount of unpaid overtime, and Defendants raise no objection to the amount of fees claimed in relation to the amounts recovered.  Therefore, the court finds that Plaintiffs' requests for attorney's fees are not excessive and should not be reduced.

<u>Experience, reputation, and ability of counsel</u>:  As this factor was taken into consideration in determining the appropriate hourly rate, no lodestar adjustment needs to be made on this basis.

<u>Undesirability of the case</u>:  There is no evidence that this is a factor in this case.

<u>Nature and length of the professional relationship</u>:  There is no evidence that this is a factor warranting an adjustment of the lodestar.

<u>Awards in similar cases</u>:   The court finds the award of attorney's fees in this case is reasonable under the circumstances and consistent with other awards in similar cases.

There is a strong presumption that the lodestar figure represents a reasonable attorney's fee. <u>R.M. Perez & Assocs., Inc. v. Welch</u>, 960 F.2d 534, 541 (5th Cir. 1992).  After carefully considering all of the <u>Johnson</u> factors, the court determines that

their weight is accurately reflected in the lodestar amount and that no departure is necessary.

Miller and Davis are awarded attorney's fees in the amount of $42,655 and Hill is awarded attorney's fees in the amount of $12,925.

Plaintiffs are awarded their costs. The court declines to award anticipatory attorneys' fees if the case is appealed.

A Final Judgment will be entered in conformity with this opinion.

**SIGNED** at Houston, Texas, this 17th day of November, 2009.

Nancy K. Johnson
United States Magistrate Judge